CHANDLER, J.,
for the court.
¶ 1. Joanne Stine seeks review of a Jackson County Chancery Court’s finding that Stine was in need of involuntary commitment for depression and alcoholism. We find that the issues presented in this appeal are moot; therefore, this appeal is dismissed.
FACTS
¶2. Joanne Stine, a resident of Ocean Springs, has worked as an X-ray technician at the Singing River Hospital for more than thirteen years. During her tenure with Singing River, Stine has maintained a good work record, despite the fact that she is an alcoholic.
¶ 3. On November 18, 2000, Terri Brewster, Stine’s friend and co-worker, filed an affidavit, seeking to have Stine committed. According to Brewster, Stine had become severely depressed over the recent death of her twenty-one month old son. Furthermore, Brewster believed that Stine’s alcoholism had taken control of her life to the extent that she could no longer provide adequate care to her nine year old daughter. Brewster stated that Stine had attempted to seek treatment by voluntarily committing herself in the past, but each time Stine would relapse; therefore, Brewster believed that involuntary commitment was the only way to save Stine and her daughter. After reviewing Brewster’s application for commitment, the chancery court accepted the affidavit and issued a writ for Stine’s custody.
¶ 4. Prior to the commitment hearing, the court appointed Dr. S.K. Pace and Dr. John Stoudenmire, both of the Singing River Hospital, to conduct a pre-evaluation screening. According to Dr. Pace, Stine suffered from depression which was complicated by a recurrence of alcohol abuse. He concluded that Stine’s best interests would be served by committing her for a fixed period of time. Dr. Stoudenmire also concluded that Stine should be committed, noting that without immediate treatment, her depression would surely worsen. Upon viewing these reports, the court ordered an immediate hearing, appointing an attorney to represent Stine.
¶ 5. During the hearing, both Terri Brewster and Dr. Pace testified that Stine needed to be committed. Stine also testified, noting that she was receiving treatment for her depression and alcoholism at the time Brewster sought to have her committed. Stine conceded that she had a drinking problem; however, she felt her problem could be remedied through outpatient treatment rather than involuntary commitment.
¶ 6. On November 21, 2000, the court concluded that Stine was in need of inpa *32 tient treatment. However, instead of committing her, the court put Stine on the waiting list for the State Hospital. The court concluded that Stine could seek private treatment as long as the chosen physician kept the court updated on her condition and progress.
¶ 7. Oral argument was held on December 5, 2000. Stine, now represented by private counsel, moved to have the court vacate its earlier order finding that Stine was mentally ill and in need of involuntary treatment. However, the court noted that the order sought to be vacated had been modified, permitting Stine to seek voluntary, outpatient treatment, rather than involuntary civil commitment. The trial court dismissed Stine’s motion to vacate. The court also ordered another hearing when it became known that Stine had violated her private physician’s orders by purchasing alcohol.
¶ 8. The hearing was held on December 12, 2000. During the hearing, Dr. Roy Deal, Stine’s physician, testified that he seriously questioned Stine’s ability to function safely on an outpatient basis. Likewise, two of Stine’s co-workers testified that she had a serious drinking problem and was in need of help. In support of Stine, Dr. Stefan Massong, a clinical psychologist, concluded that Stine had progressed to the point that she no longer needed to be involuntarily committed. After considering all of the clinical reports and testimony, the court modified its earlier ruling, concluding that Stine was no longer required to seek outpatient treatment. On February 27, 2001, the court dismissed the case without prejudice.
LAW AND ANALYSIS
¶ 9. Despite the court’s dismissal of this action through the order dated February 27, 2001, Stine appeals, arguing that the stigma brought about by the involuntary commitment order caused her great harm; therefore, the adjudication should not be permitted to stand. In support of this argument, Stine argues that the commitment hearing was constitutionally flawed as she was given no notice of the November 21, 2000 hearing. Additionally, Stine contends that the trial court applied the wrong standard of proof when adjudicating her mentally ill and, even had the right standard been applied, the evidence did not support the court’s findings.
¶ 10. Without addressing the merits of Stine’s argument, we conclude that the issue before us is moot. Stine appeals from the order handed down on November 21, 2000. This order was modified, and the case against Stine eventually dismissed by the order dated February 27, 2001. As such, there is no longer a controversy in respect to Stine’s involuntary commitment. See Pickle v. State, 791 So.2d 204, 207 (¶ 15) (Miss.2001) (stating that “[t]he doctrine of mootness applies to cases where an actual controversy no longer exists”). See also Foster v. Foster, 788 So.2d 779, 784 (¶ 9) (Miss.Ct.App.2000).
¶ 11. THIS APPEAL IS DISMISSED AS MOOT. ALL COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND BRANTLEY, JJ., CONCUR.